JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

In re:
ASHLEY SUSAN AARONS, dba
Coffee Dog Entertainment,

        Debtor.

_____

JULIUS AARONS, AS TRUSTEE
OF THE AARONS 1991 LIVING
TRUST DATED 5/16/1991 AS
AMENDED AND RESTATED
9/28/2001,

        Plaintiff-Appellant,

   v.

PATCH OF LAND LENDING,
LLC, et al.,

        Defendant-Appellees.

Case No. 2:22-CV-06447-JLS

Bankruptcy Case No. 2:19-bk-18316-NB

Adversary Case No. 2:22-ap-01104-NB

**ORDER AFFIRMING BANKRUPTCY COURT ORDER**

The present bankruptcy appeal of an order dismissing an adversary action is fully briefed.  (*See* Docs. 22, 23, & 25 (Opening, Answering, and Reply briefs).)  The procedural history of the present appeal is complex, but the issues it raises are not.  In the Bankruptcy Court, Plaintiff-Appellant's adversary complaint was dismissed without leave to amend.  Plaintiff-Appellant challenges that dismissal.  However, for the reasons set forth herein, the Court AFFIRMS the Bankruptcy Court's Order Granting Defendants' Motion to Dismiss Complaint for Failure to State a Claim Without Leave to Amend (AP 45 ("Order")) and the accompanying Memorandum Decision Granting Defendants' Motion to Dismiss Complaint (AP 44 ("Memorandum Decision")).[1]

## I.    STANDARD OF REVIEW

The district court reviews the bankruptcy court's legal conclusions de novo and its factual determinations for clear error.  *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 526 (9th Cir. 2001).  "De novo means review is independent, with no deference given to the trial court's conclusion."  *In re Curtis*, 571 B.R. 441, 444 (B.A.P. 9th Cir. 2017) (internal quotation marks omitted).

## II.    BACKGROUND

This appeal arises out of the adversary action, *Julius Aarons, et al., v. Patch of Land Lending, LLC, et al.*, No. 2:22-ap-01104-NB, which was removed from state court to the bankruptcy case *In re Ashley Susan Aarons*, No. 2:19-bk-18316-NB.  (*See* AP 1).  Plaintiff-Appellant Julius Aarons ("Appellant"), father of Debtor Ashley Susan Aarons ("Debtor"), purchased a promissory note secured by a junior deed of trust on real property ("the Property") that was part of Debtor's bankruptcy estate.  Although the bankruptcy petition was originally filed as a Chapter 11 reorganization case, it was later converted to a Chapter 7 liquidation case, and Appellant purchased

---

[1] Both of these are attached to Appellant's Amended Notice of Appeal.  (*See* Doc. 2 (Amd. Notice of Appeal).)  Together they represent the Bankruptcy Court's reasoned opinion granting the motion to dismiss and its order to dismiss the action without leave to amend.  Generally, the Court refers to the individual documents of record by their docket numbers from the adversary proceeding, abbreviated "AP," and the bankruptcy case, abbreviated as "BK."

1   the promissory note after that conversion.  Appellant did so with the intent of

2   preventing the junior lienholder from foreclosing on the property, and he was

3   successful in that attempt.

4        This success was temporary, however, because when agreed-to payments to the

5   senior lienholder were not made, the senior lienholder foreclosed on the property for

6   an amount that did not satisfy the senior lien, which effectively extinguished

7   Appellant's junior lien.  Appellant filed an adversary action, first to attempt to halt the

8   foreclosure by the senior lienholder and, when that failed, he amended his complaint

9   to assert a wrongful foreclosure claim.  (*See* AP 16 ("FAC").)  The Bankruptcy Court

10  dismissed his case without leave to amend, and he filed the present appeal.

11  With that introduction, the relevant details may be summarized as follows.

12       **A.     Debtor's Chapter 11 Bankruptcy**

13       The Debtor filed a voluntary petition for relief under Chapter 11 of the

14  Bankruptcy Code on July 17, 2019.  (BK 1.)

15       On June 22, 2020, the then-current deed of trust holder as to the Property,

16  Invictus Pooler Trust 3A ("Invictus"), obtained relief from the automatic stay, which

17  expressly permitted it to foreclose on the property.  (BK 255 ("Order lifting stay").).

18       On August 7, 2020, Debtor filed an amended Chapter 11 Disclosure Statement

19  Dated August 7, 2020 (BK Doc. 311 (("Disclosure Statement") and her Chapter 11

20  Plan (BK 313 ("Plan")).

21       On September 11, 2020, the Debtor filed her Brief in Support of Entry of an

22  Order Confirming Debtor's Chapter 11 Plan with Certain Non-Material

23  Modifications.  (BK 329 ("Confirmation Brief").)  Additional non-material

24  modifications were obtained by Debtor on her motion filed February 8, 2021.  (*See*

25  BK Docs. 383 (Motion) & 387 (Order).)

26       On February 11, 2021, the Bankruptcy Court confirmed the Plan.  (BK 390.)

27  The confirmed Plan expressly adopted a Modification Agreement as to the Property,

28  which was entered into by Debtor and Patch of Land Lending, LLC ("Patch of Land"

or "POL"), Invictus, and FCI Lenders Services, Inc., and which was amended by four addenda.  (*See id.* at 4 n.1; BK 383 at 57-75 (Modification Agreement) & 23-74 (four addenda dated Oct. 14, Nov. 6, and Dec. 22, 2020, and Feb. 3, 2021)).)   The confirmed Plan also expressly designated the Haycock lien as junior to that of Patch of Land.  (BK 390 at 9, ¶ 27(a) ("liens . . . that were junior to the lien of POL as of the [bankruptcy filing date] . . . shall remain junior . . . [including] $170,000 deed of trust in favor of beneficiary, James Haycock").)

**B.      Debtor's Failure to Pay Under the Modification Agreement, Conversion of the Case from Chapter 11 to Chapter 7, Appellant's Purchase of the Haycock Junior Lienhold, and the Foreclosure Sale of the Property**

The Modification Agreement allowed Debtor to retain the property, but when she failed to meet her obligations thereunder, on October 14, 2021, after several hearings, the Bankruptcy Court found cause to convert the case to a Chapter 7 liquidation case.  (BK Doc. 460.)  Before it did so, though, the Bankruptcy Court gave Debtor a short window of time in which to arrange financing to pay the debts secured by the Property by the time of the next scheduled hearing.  (*Id.*)  Despite that chance, on October 18, 2021, over Debtor's objection (*see* BK Doc. 461), the Bankruptcy Court ordered that the case be converted to a Chapter 7 case and that "the property revest in the chapter 7 estate."  (BK Doc. 464 at 2.)  The Bankruptcy Court also expressly ordered that previously granted relief from the automatic stay provision remained in effect.  (*Id.*)

After the confirmation of the Plan and after conversion of the case from a Chapter 11 to a Chapter 7 case, Appellant purchased his interest in the Property from James Haycock on January 1, 2022.  (FAC ¶ 14.)

A foreclosure sale was noticed and the Property was sold at auction on March 30, 2022.  (Mem. Dec. at 14-16.)  The timeline and the relevant recorded documents for the Property may be described as follows:

4

| | |
|---|---|
| March 22, 2018 | Debtor executed the Promissory Note on the Property in the amount of $3,000,000, representing a loan from Patch of Land to Ashley S. Aarons, Trustee of the Ashley S. Aarons 2015 Trust dated May 15, 2015.  (RJN Ex. 1, AP 26-3 at 13-31 (Promissory Note and attachments).)  The corresponding Deed of Trust was recorded on March 27, 2018 as Instrument number 20180291459 ("-1459").  (*Id.* at 32-66.) |
| February 6, 2020[2] | Instrument number 20200163705 ("-3705") was recorded as an Assignment of Deed of Trust from Patch of Land to Wilmington Savings Fund Society, FSB ("Wilmington"), as Trustee for Invictus.  (RJN Ex. 2, AP 26-3 at 73-79.)  The assignment of the Deed of Trust was recorded on February 10, 2020.  (*Id.* at 73.) |
| June 15, 2020 | Instrument number 20200647273 was filed by California TD Specialists, "acting as an agent for the trustee or beneficiary under the Deed of Trust dated 3/22/2018," filed a Notice of Default and Election to Sell the Property.  (RJN Ex. 7, AP 26-3 at 124-29.)  The Notice of Default and Election to Sell Under Deed of Trust was recorded on June 15, 2020, as instrument number 20200647273.  (*Id.* at 124.)  This Notice of Default was later rescinded, as evidenced by the recordation of a Notice of Recission on March 3, 2021 as instrument number 20210348612.  (RJN Ex. 11, AP 26-3 at 311-12.) |
| March 18, 2021 | Instrument number 20200363249 was recorded as an assignment of the Deed of Trust by Wilmington (as Trustee for Invictus) from |

---

[2] The Chief Operating Officer of Patch of Land signed an assignment that is dated February 6, 2019. The "6th" and "February" are handwritten on the form, but the "2019" is on the copied form. (*Id.* at 77.)  The next page, the notary public's acknowledgement, is dated February 6, 2020, and is completely handwritten. (*Id.* at 78.)  Both pages are part of recorded instrument number -3705. Given the acknowledgment date is the same date as the assignment date except as to the year (which is preprinted on the assignment form), and given the recorded date is four days after the acknowledgement date, it is clear from the face of the document that the 2019 date is clerical error.

|  |  |
|---|---|
|  | Invictus to Verus Securitization Trust 2020-NPLI ("Verus"). (RJN Ex. 3, AP 26-3 at 81-83.) |
| August 11, 2021 | California TD Specialists, "acting as an agent for the trustee or beneficiary under the Deed of Trust dated 3/22/2018," recorded a Notice of Default and Election to Sell the Property ("Notice of Default"), as instrument number 20211227965. (RJN Ex. 12, AP 26-3 at 314-29.) The Notice of Default lists both FCI Lender Services, Inc., and California TD Specialists as servicers for Wilmington. Wilmington, in turn, was the trustee for Verus. |
| March 30, 2022 | Foreclosure sale. |

### C.      Appellant's Adversary Action

On March 26, 2022, Appellant filed a complaint in state court in an unsuccessful attempt to halt the foreclosure, but Defendant-Appellees removed the action, and the case became an adversary action associated with the present bankruptcy case. (*See* AP 1 (Compl.).) After the foreclosure sale, Appellant filed his First Amended Complaint on May 31, 2022, challenging the foreclosure. (AP 16.)

Specifically, Appellant alleged he purchased from James Haycock all of Haycock's rights to a promissory note, which was secured by a junior deed of trust as to the Property, and that he paid $260,000 for a promissory note that had an original principal amount of $170,000. (FAC ¶ 14.) Appellant alleged that his second-in-priority lien took priority over that interest claimed by Appellee Patch of Land because Patch of Land had transferred its rights in the property to Defendant-Appellee Invictus. (FAC ¶¶ 15, 24(a).) On this theory, Appellant also alleged that the foreclosure sale was ineffective. He also alleged the transfers of the property were improper based on a lack of proper endorsements or assignments. (FAC ¶ 24(a).) Further, Appellant alleged that because Debtor made a tender offer in the amount of $5,000,000 prior to the sale, the mortgage servicer was stripped of its authority to conduct the foreclosure sale. (FAC ¶ 24(c).) Finally, Appellant alleged that the

amount of default was incorrectly stated in the notice of default as $3,953,965.08. (FAC ¶ 24(i).)  Appellant alleged that this amount was "overstated by hundreds of thousands of dollars in fees, interests [*sic*] and late charges."  (*Id.*)

### D.     The Bankruptcy Court's Dismissal

The Bankruptcy Court dismissed these claims without leave to amend, setting forth numerous bases for dismissal.

## III.   DISCUSSION

As discussed in detail in the following subsections, the Bankruptcy Court properly dismissed the FAC without leave to amend.  Specifically, the Court addresses (a) the substantive validity of the foreclosure sale, analyzed by the Bankruptcy Court based on judicially noticed documents (*see* Mem. Dec. at 14-16); (b) the remedies available to Appellant as a junior lienholder (*see id.* at 12-13); (c) the inability of Appellant to state a claim based upon the Debtor's alleged tender of a payoff amount (*see id.* at 18-20); (d) the effect of the Florida court order (which was not addressed below); and (e) the issue of whether Appellant should have been granted leave to amend the FAC (*see id.* at  2-3 n.2 & 21-22).

### A.     Validity of Foreclosure Sale

The Bankruptcy Court concluded, based on judicially noticed documents, that the foreclosure sale was valid, and that any loss to Appellant was the result of his status as a junior lienholder, who purchased a property he knew was part of a Chapter 7 bankruptcy estate.  (Mem. Dec. at 14-16.)  The Bankruptcy Court correctly held that the foreclosure sale of the Property was valid and its effect was to extinguish Appellant's junior lien.[3]  Thus, Appellant had no remaining interest in the Property when he filed the FAC.

In the FAC, Appellant alleged that Patch of Land lacked authority to foreclose. The recorded documents, of which the Bankruptcy Court properly took judicial notice,

---

[3] The details of Appellant's argument regarding an apparent clerical error and regarding blank endorsements and assignments are discussed in a separate section, below, relating to whether leave to amend should have been granted.

evidence a chain of title that support Appellant's allegation.  However, these documents also evidence that Patch of Land was **not** the foreclosing party.  Instead, as the Bankruptcy Court noted, the reference to Patch of Land in the Notice of Default identifies it as the original beneficiary, not as the then-current beneficiary, which was identified as Verus.  Examination of the Notice of Default reveals that FCI Lender Services, Inc., and California TD Specialists acted as servicers for Wilmington Savings Fund Society, which was the trustee for Verus.[4]  Thus, the Bankruptcy Court did not err in concluding that Appellant's allegations failed to state a claim for wrongful foreclosure based on a defect in the chain of title.

**B.      Remedy Available to a Junior Lienholder Upon Foreclosure**

Appellant argues that he has the right to challenge the validity of the foreclosure sale.  (Opening Br. at 5-7.)  The Bankruptcy Court rejected this argument and concluded that, as a practical matter, where, as here, the junior lienholder complains that the property was sold at a below-market price (*see* FAC ¶ 22), his best remedy would have been to bid on the property himself.  (Mem. Dec. at 12-13.)  In arriving at this conclusion, the Bankruptcy Court discussed two California Court of Appeal cases, *Bank of Seoul & Trust Co. v. Marcione*, 198 Cal. App. 3d 113, 118 (1988), and *Friery v. Sutter Buttes Sav. Bank*, 61 Cal. App. 4th 869, 878 (1998), both of which involve the rights of junior lienholders upon foreclosure by a senior lienholder.

In *Bank of Seoul & Trust Co.*, upon which Appellant relied, the junior lienholder suffered a loss when property was sold at auction under market value. *Bank of Seoul*, 198 Cal. App. 3d at 120 The junior lienholder was present at the auction, and wanted to bid a higher amount, but due to the unexplained requirement that a bid must be for a specific dollar amount, the auctioneer rejected the junior lienholder's bid in favor of another bid.  *Id.* at 118-19.  Under these circumstances, the

---

[4] In the confirmed Plan, in discussing the priority of a number of liens against the Property, all these entities are referred to collectively as "POL."  (*See* BK Doc. 390 at 8-9, ¶ 27.)  Their various interests in the Property all relate to the same senior lien on the Property.  (*Id.*)  And this portion of the confirmed Plan also specifies the priority of the junior liens of four other persons or entities, including Appellant's interest (then belonging to Haycock) as second in priority.  (*Id.*)

court permitted the junior lienholder to assert claims based on his interest in the auctioned property. *Id.* at 120-21.  The rationale was that the auctioneer-trustee's primary "duty was to conduct the sale fairly and openly, and to secure the best price for the trustor's benefit." *Id.* at 119.  By not permitting a higher bid, and by not explaining the reason for refusing to accept the higher bid, the auctioneer-trustee contravened this duty. *Id.* at 119-20.

In *Friery*, upon which Appellee relied, a junior lienholder was not permitted to sue after foreclosure.  61 Cal. App. 4th at 871.  *Friery* is informative for the manner in which the appellate court distinguished it from a prior case.  In *Friery*, based on precedent, the court considered whether the junior lienholder had any special relationship with either a lender or the senior lienholder that would justify imposing a duty to protect the junior lienholder's interest.  Finding none, the court distinguished an earlier case that allowed a claim by a junior lienholder based on the facts presented there. *Id.*  Specifically, *Gluskin v. Atlantic Savings & Loan Association*, 32 Cal. App. 3d 307 (Ct. App. 1973), involved a seller, a construction lender, and a developer who entered into a tripartite agreement whereby the seller was to convey land to the developer, who borrowed money from the lender to build houses. *Id.* at 309-11.  The seller's interest was by agreement subordinated, and the *Gluskin* court held that the lender and the developer could not make secret modifications to their agreement to the detriment of a subordinated seller. *Id.* at 313-15.  Examining *Gluskin*, the *Friery* court observed that to allow such modification would have the effect of secretly and unfairly altering the risk to the seller, which would result in a breach of a duty of good faith and fair dealing. *See Friery*, 61 Cal. App. at 877 ("Read properly, *Gluskin* does no more than find a duty of good faith and fair dealing in a subordination agreement, preventing two of the parties from substantially impairing the third's interest in the joint enterprise.").  But in *Friery*, because there was no similar secret and unfair alteration of the risk calculus, the junior lienholder was not permitted to assert his claims. *Id.* at 877-78.

9

1    Both *Bank of Seoul* and *Friery* support the Bankruptcy Court's conclusion here.

2    Unlike the circumstances in *Bank of Seoul*, there is no evidence that Appellant was

3    denied the opportunity to bid on the Property.  And this case is distinguishable from

4    *Gluskin* in the same manner as *Friery* was.  The concern at issue in *Gluskin* was the

5    inability of the plaintiff-seller to accurately gauge the risk of a three-party deal due to

6    the collusion and bad faith conduct of the other two parties.  Here, there were no

7    allegations of a special relationship or other collusion that would tend to obscure

8    Appellant's risk from him as a result of the senior lienholder's conduct.  To the

9    contrary, Appellant knowingly purchased a second-in-priority note that was secured

10   by real property that was already part of a Chapter 7 bankruptcy estate.

11        The Bankruptcy Court reconciled *Bank of Seoul* and *Friery* by explaining

12   Appellant lacked standing[5] to object to the foreclosure sale:

13        The usual rule under California law is that, absent a contractual

14        relationship between a junior and senior lienholder, the former takes its

15        interest subject to the risks that the latter might foreclose, and the latter

16        has no contractual duty or tort duty to the former regarding the

17        foreclosure, as held in *Friery*.  If Plaintiff had alleged that he was directly

18        injured by Defendants—e.g., if he attempted to bid at the foreclosure sale

19        and his bid was ignored (as in *Bank of Seoul*)—that would give Plaintiff

20        standing to sue.

21   (Mem. Dec. at 12-13.)  According to the Bankruptcy Court, the junior lienholder may

22   recoup some losses if he bids on the property himself, but absent either the denial of

23   the right to bid on the property by the junior lienholder or some identifiable

24   contractual or legal duty of the senior lienholder to the junior, the junior lienholder

25

26

27

28

---

[5] The Bankruptcy Court uses the term "standing," which the Court avoids.  From the discussion, it is clear that the Bankruptcy Court was not discussing whether Appellant had Article III standing, which would implicate the Court's subject-matter jurisdiction.  (*See* Mem. Dec. at 12-13.)  Instead, the Bankruptcy Court's decision concludes that Appellant lacks "standing" in the sense that he cannot bring the asserted claims.

1    may not sue for wrongful foreclosure after the fact.  The Court agrees.  Thus,

2    Appellant has no claim based on this theory, as the Bankruptcy Court correctly held.

3        **C.**    **Appellant Has No Cognizable Claim Based on Debtor's Alleged**

4               **Tender Offer**

5        Appellant purported to assert a claim under the California Homeowners Bill of

6    Rights ("HBOR"), specifically under California Civil Code § 2924.11(b)(2), by

7    alleging that Debtor tendered an offer with written proof of funds of $5,000,000.  FAC

8    ¶ 24(b)-(d).  Specifically, Appellant alleged it was the duty of the servicer under

9    § 2924.11(b)(2) to refrain from conducting a trustee's sale upon receipt of such a

10   confirmed offer.  The subsection upon which Appellant relies states:

11           (b) ***If a foreclosure prevention alternative is approved in writing***

12           ***after the recordation of a notice of default***, a mortgage servicer,

13           mortgagee, trustee, beneficiary, or authorized agent shall not record a

14           notice of sale or conduct a trustee's sale under either of the following

15           circumstances:

16              . . . .

17           (2) A foreclosure prevention alternative has been approved in

18           writing by all parties, including, for example, the first lien investor,

19           junior lienholder, and mortgage insurer, as applicable, and proof of funds

20           or financing has been provided to the servicer.

21   Cal. Civ. Code § 2924.11(b)(2) (emphasis added).  Here, there was no allegation that a

22   foreclosure prevention alternative was approved after the operative Notice of Default

23   was recorded in October 2021.  Instead, the only such written alternative was entered

24   into **before** the Notice of Default, as memorialized in the Modification Agreement

25   (and four addenda) and incorporated into the confirmed Plan; the latest addendum to

26   the Modification Agreement was entered into eight months before, in February 2021.

27   Thus, the requirements for a claim under § 2924(b)(2) are not met here.

28

More fundamentally, this protection of the HBOR is not extended to junior lienholders; it may be asserted only by a "borrower."  The HBOR was passed to assist homeowners who are past due paying their mortgages.  Its stated purpose is described as follows:

> The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.

Cal. Civ. Code § 2923.4.

Specifically, "a borrower" may "request[] a foreclosure prevention alternative" such as that referred to in § 2924(b)(2).  *See, e.g.*, Cal. Civ. Code § 2923.7(a) ("When a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.").  A "borrower" is defined as "any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer."  Cal. Civ. Code § 2920.5(c)(1).  A "foreclosure prevention alternative" refers to a first lien loan modification or another available loss mitigation option."  Cal. Civ. Code § 2920.5(b).

Given these provisions, Appellant, a junior lienholder, is clearly not among those persons authorized to assert a claim under the HBOR.  The protection of the HBOR sought by Appellant here is extended only to "borrowers," as the Bankruptcy Court correctly held.

**D.     Florida Court Order**

Apparently as part of his allegations for the HBOR claim, Appellant alleged that "[Appellees] did not inform the Plaintiff or the Owner that they had obtained relief from a stay order in Florida that would have barred any foreclosure."  (FAC

12

¶ 24(h).)  He expands upon this argument in his Opening Brief, contending that the lack of notice to him by Appellees amounted to a procedural due process violation.[6] (*See* Opening Br. at 13-15.)  In the Reply Brief, Appellant explains that the Florida litigation was "the fourth lienholders' pending SEC Receivership action."  (Reply Br. at 4-7.)  The essence of Appellant's argument is that Appellees went to United States District Court in Florida to get the Bankruptcy automatic stay overturned so that the foreclosure could proceed.  (*See* Opening Br. at 13 ("Appellant and Haycock were unaware that the first lien holder had gone to the United States District Court in Broward County, Florida to overturn the Bankruptcy Court's stay order in Florida that would have barred any foreclosure.").)

Other than identifying it as a procedural due process right, Appellant does not explain the source of his claimed right to be notified of such an event.  Neither does he explain how the law gives him any remedy.  Given the substance of the order from the Florida court, Appellant's argument is nonsensical.  An examination of the record reveals that, for two related reasons, the Florida court order clearly did not have the effect Appellant claims it has:  The scope of the order is much narrower than Appellant portrays it to be and, relatedly, the language Appellant quotes is taken out of its narrow context.

First, on February 6, 2021, the Florida Court acted with a narrow purpose:  to amend a receivership order for the limited purpose of permitting a receiver to enter into an agreement in the present bankruptcy case in order to "promote the Debtor's Chapter 11 Plan of Reorganization."  (*See Securities and Exchange Commission v. Complete Business Solutions Group, Inc.*, No. 20-CIV-81205-RAR (Feb. 6, 2021, S.D. Fl.) (found here at Doc. 20-2 at 543-46).)  Specifically, the Florida court modified its "Amended Order Appointing Receiver . . . for the limited purpose of

---

[6] Appellant also purports to raise a substantive due process argument.  (*See* Opening Br. at 11-13.) He sets forth several paragraphs regarding the law of substantive due process claims and then simply summarily concludes that "[t]he Bankruptcy Court has effective denied Appellant his right to substantive due process in granting the [motion to dismiss] without leave [to amend]."  (*Id.* at 13.) This argument is wholly conclusory and is meritless.

1  lifting the litigation injunction . . . to permit the Receiver to enter into a settlement

2  agreement in order to resolve portions of a bankruptcy claim and to avoid a costly

3  bankruptcy adversary proceeding." (*Id.* at 546.)  Thus, the Florida court was not

4  lifting any general litigation injunction or prohibition on sale of the Property at

5  foreclosure; instead, the Florida court was merely permitting a receiver it appointed to

6  take action in the present bankruptcy case with respect to a junior lien held by the

7  receivership.

8         Second, the Florida court indeed sets forth the language Appellant quotes, that

9  its order should not "be deemed to authorize any third party to . . . attempt to assert a

10 right to foreclose its lien."  *Id.*  It states that the order should not be used to foreclose

11 "with the intent to assert a position detrimental to the Receivership's position as set

12 forth in the proposed settlement with the Chapter 11 Debtor."  *Id.*  It is not entirely

13 clear why this language was included.  It seems the parties and/or the Florida court

14 were attempting to prevent the order from being misconstrued and, in so doing, gave

15 Appellant the opportunity to make the argument he makes in the present appeal.

16        Regardless of the purpose of the inclusion of this language, it is not amenable to

17 the interpretation Appellant ascribes to it.  The order from the Florida court did not

18 order that an existing injunction against a foreclosure sale of the Property be lifted.

19 Instead, it ordered that its receivership order be amended to allow the receiver in the

20 case before it to participate in a settlement agreement in the present bankruptcy case to

21 avoid any adverse effect on the receivership.  Consistent with that order, on February

22 8, 2021, Debtor filed her Motion to Approve Non-Material Modifications to Chapter

23 11 Plan that sought, *inter alia*, to "memorialize the resolution reached between Debtor

24 and the Receiver." (BK Doc. 383 at 4.)  The motion clearly referred to the settlement

25 as having been authorized by the Florida court's February 6, 2021 order (*id.* at 8-9).

26 Moreover, the Chapter 11 Plan, which incorporated just such a settlement agreement,

27 was confirmed by the Bankruptcy Court just five days after entry of the Florida court

28 order.

Only the Bankruptcy Court, the court with jurisdiction over the assets of the Debtor that were part of the bankruptcy estate, including the Property, could determine if any party could foreclose on the Property.  It expressly authorized such a sale on June 22, 2020, when it lifted the automatic stay and expressly authorized a foreclosure sale.  (BK 255).  The foreclosure on the Property was delayed after the parties agreed to new terms on the debts associated with the Property (including those agreed to in the manner consistent with those referenced by the Florida court order).  Although these new terms were incorporated into the confirmed Plan, later, when the Bankruptcy Court found cause to convert the case from a Chapter 11 reorganization to a Chapter 7 liquidation, it expressly ordered that its earlier orders granting relief from the automatic stay remain in effect.

Because it is clear that the action before the Florida court could not, and did not, impose a stay as to the sale of the Property, Appellant's argument regarding the Florida court order is baseless, and did not amount to a due process violation as claimed by Appellant.

**E.     Leave to Amend Was Properly Denied**

Appellant argues that he should have been granted leave to amend.  (Opening Br. at 15.)  But he does not explain what allegations he could make to plead a fraud claim with particularity.  The Court discusses several of his arguments.

Appellant alleged in the FAC that that a Notice of Default recorded against the Property was "false and fraudulent" in that the amount owed was overstated by hundreds of thousands of dollars in fees, interest, and late charges.  (FAC ¶ 24(i).) The Bankruptcy Court noted that allegations of fraud must be pleaded with particularity and dismissed them as insufficiently pleaded.  (*See* Mem. Dec. at 16-18.)

The allegation in the FAC is that a particular Notice of Default was void because it stated an incorrect amount of default.  But the that Notice of Default already invalid due to its rescission, so whether it suffered from the deficiency identified by Appellant is quite irrelevant.  Appellant could not have amended the

allegations regarding the rescinded Notice of Default in a manner that would have supported his claim.  Therefore, the Bankruptcy Court correctly denied leave to amend as to this allegation.

In the Reply, Appellant expanded his argument regarding irregularities in the chain of title.  Specifically, in arguing the Bankruptcy Court should not have denied him leave to amend to challenge the foreclosure sale, Appellant notes that two assignments of rights were executed by Patch of Land without a payee or assignee, and these facts could have further supported his claim of wrongful foreclosure.[7]  (*See* Reply Br. at 7-10.)  He also points out that there was an assignment of the deed of trust by Patch of Land to a new beneficiary in blank dated June 15, 2018 and then another assignment to the beneficiary's servicer in 2020.  (*See id.* at 9-10.)  These irregularities do not meet the standard required to assert a wrongful foreclosure claim.

To assert a claim for wrongful foreclosure based on defects or irregularities in assignments of the promissory note or deed of trust, Appellant would be required to establish that the assignment was void rather than merely voidable.  *Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919, 931, 935 (2016).  Under California law, "the general rule is that defects and irregularities in a sale render it merely voidable and not void."  *In re Cedano*, 470 B.R. 522, 529-30 (B.A.P. 9th Cir. 2012) (relying on *Little v. CFS Serv. Corp.*, 188 Cal. App. 3d 1354, 1358 (1987)).  "'Void' means to have no legal or binding force; whereas, 'voidable' is defined as 'that which may be avoided, or declared void.'"  *Little*, 188 Cal. App. 3d at 1358.

Appellant does not provide any legal theory as to how the claimed irregularities would void the assignment of the beneficial interest in the deed of trust from Patch of Land to Invictus.  Instead, Appellant merely argues in a conclusory manner that these inconsistencies "clearly establish[] that there are issues that create a question as to

---

[7] Also at issue is an Allonge to an unidentified payee dated March 28, 2018.  (*See* Proof of Claim 28-1 at 18, Ex. B.)  As discussed in this section, neither the blank assignment nor the Allonge alters the validity of the foreclosure sale.

1   whether the foreclosing entity had the right to foreclose."  (Reply Br. at 10.)  This is

2   insufficient.

3          The documents with a blank payee and a blank assignee likewise do not void

4   any transfer.  These documents are examples of the functioning of the secondary

5   market for real property mortgages using "endorsements in blank."  This Court agrees

6   with Bankruptcy courts applying California law that have repeatedly held that such

7   blank assignments or endorsements do not void either deeds of trust or accompanying

8   promissory notes.  *See, e.g., In re Smith*, 509 B.R. 260, 266-67 (Bankr. N.D. Cal.

9   2014); *In re Aniel*, 2020 WL 9211229, at *2-3 (Bankr. N.D. Cal. June 26, 2020), *aff'd*

10  *sub nom. Aniel v. HSBC Bank USA, Nat'l Ass'n*, 633 B.R. 368, 376 (N.D. Cal. 2021)

11  (observing that, under California law, such a deed of trust is "negotiated by transfer of

12  possession alone until specially indorsed").  Similarly, the clerical error (February

13  2019 versus February 2020) does not void any transfer of rights.  *See In re Smith*, 509

14  B.R. at 266-67 (noting that even an undated endorsement was adequate to establish

15  validity of a transfer of a deed of trust).

16         Moreover, the Bankruptcy Court properly rejected the notion that Appellant

17  could derivatively assert Debtor's claims based on her alleged tender offer, as Debtor

18  herself could not assert such claims.  (*See* Mem. Dec. at 2-3 ("[S]upposing for the

19  sake of discussion that [Appellant] had standing to renew Debtor's arguments as to the

20  dollar amounts, this Court has already rejected those arguments because . . . those

21  claims lack merit.") (relying on *Ashley Susan Aarons v. Patch of Land Lending, et al.*,

22  2:22-ap-01008-NB), Doc. 43 ("Related Dismissal Order").)  Specifically, claims that

23  accrued before the February 11, 2021 confirmation of Debtor's Chapter 11 Plan[8]

24  would be barred by that confirmation, which included Debtor's settlement of such

25  claims.  (*See* Related Dismissal Order at 8-11.)   This is because the confirmed Plan

26  was binding on Appellant's predecessor-in-interest, James Haycock; as such, it is

27  binding on Appellant as Haycock's successor-in-interest.  *See* 11 U.S.C. § 1141(a); *In*

28

---

[8] The claim based on the June 15, 2020 Notice of Default would fall into this category.

*re Wolfberg*, 255 B.R. 879, 882 n.4 (B.A.P. 9th Cir. 2000) (noting that successors-in-interest to a party subject to a Chapter 11 plan would be bound by the plan to the same extent as were their predecessors-in-interest), *aff'd*, 37 F. App'x 891 (9th Cir. 2002).

As to any other claims, the Bankruptcy Court correctly held that, after the conversion of Debtor's bankruptcy case to a Chapter 7 case in October 2021, any such claims would be the property of the estate, and therefore such claims would be assertable only by a Chapter 7 trustee, and not by a debtor. (*See* Related Dismissal Order at 11-13); 11 U.S.C. § 323; *In re Meehan*, No. AP 13-01208-ES, 2014 WL 4801328, at *4 (B.A.P. 9th Cir. Sept. 29, 2014) (noting that "[o]nly a trustee may pursue a cause of action belonging to the bankruptcy estate"), *aff'd*, 659 F. App'x 437 (9th Cir. 2016). If cognizable at all, claims asserted by Appellant in the FAC based on Debtor's March 29, 2022 tender offer would belong to the estate, not to Appellant.

In sum, Appellant has not articulated any manner in which he could have amended the FAC to state a claim upon which relief could be granted. Accordingly, the Bankruptcy Court properly denied leave to amend.

## IV.    CONCLUSION

Appellant's wrongful foreclosure claims were properly dismissed without leave to amend because the judicially noticed, recorded chain-of-title documents establish a valid non-judicial foreclosure sale. No amendment could cure this deficiency. Appellant also has no cognizable claims based on Debtor's alleged offer to pay off the amount due on the eve of foreclosure, and leave to amend was properly denied because, as explained herein, Appellant did not articulate any basis upon which he

could amend to state a viable claim.  Therefore, the Court AFFIRMS the decision of the Bankruptcy Court.

**IT IS SO ORDERED.**

**DATED:**  September 29, 2023

_____
The Hon. Josephine L. Staton
United States District Judge